# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| BETTY JO M.,[1] | : | Case No. 1:23-cv-00367 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : : : | |
| Defendant. | : | |

## DECISION AND ORDER

Plaintiff filed an application for Disability Insurance Benefits in January 2021. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court REVERSES the Commissioner's decision and REMANDS for further proceedings.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

## I. BACKGROUND

Plaintiff asserts that she has been under a disability since March 10, 2021.[2] At that time, she was sixty-one years old. Accordingly, Plaintiff was considered "closely approaching retirement age" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(e). Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 6) is summarized in the ALJ's decision ("Decision," Doc. No. 6-2 at PageID 36-63), Plaintiff's Statement of Errors ("SE," Doc. No. 9), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 11), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 12). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can

---

[2] The ALJ decision states that Plaintiff alleges disability beginning January 10, 2021. (Decision, Doc. No. 6-2 at PageID 39, 59.) However this appears to be a clerical error. In her application for Disability Insurance Benefits, Plaintiff alleged a disability onset date of March 10, 2021. (AR, Doc. No. 6-5 at PageID 192.) Plaintiff's representative also referred to an alleged onset date of March 10, 2021 in the pre-hearing and Appeals Council appeal briefs. (AR, Doc. No. 6-6 at PageID 266, 269.)

be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v.*

3

*Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

**III.   FACTS**

    **A.   The ALJ's Factual Findings**

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

> Step 1:   Plaintiff engaged in substantial gainful activity during the first quarter of 2021 but has not engaged in substantial gainful activity since that time.
>
> Step 2:   She has the severe impairments of osteoarthritis of the knees, status post remote right knee arthroplasty, left hip osteoarthritis, lumbar

4

|  |  |
|---|---|
| | spinal degeneration, carpal tunnel syndrome, obstructive sleep apnea, diabetes mellitus, hyperlipidemia, fibromyalgia, and obesity. |
| Step 3: | She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of sedentary work as defined in 20 C.F.R. § 404.1567(a), subject to the following limitations: "[Plaintiff] could occasionally push/pull with the left lower extremity. [Plaintiff] could occasionally climb ramps and stairs, but would be precluded from climbing ladders, ropes, and scaffolds. She could frequently balance and occasionally stoop. [Plaintiff] should avoid kneeling, crouching, and crawling. [Plaintiff] could tolerate frequent handling and fingering with the bilateral upper extremities. [Plaintiff] should avoid exposure to hazards, including moving machinery, heavy machinery, and unprotected heights. She should avoid commercial driving."[3]  Plaintiff is capable of performing her past relevant work as a postmaster (as it is generally performed) and bookkeeper (as it is generally performed and as Plaintiff actually performed the job). |

(Decision, Doc. No. 6-2 at PageID 41-59.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 59.)

**B.    Consultative Physician Olayinka Aina, M.D.**

Olayinka Aina, M.D. performed a consultative physical examination in July 2021. (AR, Doc. No. 6-7 at PageID 435-42.) According to Dr. Aina, Plaintiff's clinical signs

---

[3] The ALJ noted: "[T]his residual functional capacity is less restrictive than the residual functional capacity the undersigned provided to the vocational expert at hearing. The use of this less restrictive residual functional capacity does not impact the vocational expert testimony regarding [Plaintiff's] ability to perform her past relevant work." (Decision, Doc. No. 6-2 at PageID 45.)

5

and reported symptoms supported diagnoses of severe low back pain, neck pain, bilateral knee pain, morbid obesity, and bilateral wrist pain. (*Id.* at PageID 437.) Dr. Aina opined:

> Based on my objective finding, I think [Plaintiff] should be able to lift, pull, and push occasionally about [ten] pounds, frequently about [five] pounds. Prolonged standing and sitting for more than [fifteen] to [twenty] minutes may be affected. Hearing, speaking as well as short travelling are unaffected at this time.

(*Id.*)

The ALJ concluded that Dr. Aina's opinions were "only partially persuasive." (Decision, Doc. No. 6-2 at PageID 57.) The ALJ first addressed Dr. Aina's lifting and carrying restriction and explained that it was "generally consistent with the objective examination showing reduced spinal range of motion and reduced range of motion in the hips and knees." (*Id.*) The ALJ also reasoned that the limitation was "not inconsistent with the evidence of record documenting a morbidly obese body habitus with index greater than [fifty], and reports of bilateral wrist/hand pain with weakness and frequent dropping of items associated with carpal tunnel syndrome." (*Id.*) Turning to Dr. Aina's restriction on prolonged sitting and standing, the ALJ stated: "The undersigned has not adopted the standing/sitting limitations as the examiner cited they 'may be affected' and such limitation was only speculative." (*Id.*) The ALJ then explained that she included additional standing and walking limitations in the RFC because such limitations are supported by Dr. Aina's examination findings of "reduced spinal range of motion, reduced range of motion in the knees and hips, and reports of joint pain," as well as other evidence in the record: "her body habitus coupled with the objectively documented joint arthritis in the knees and left hip, as well as her history of diabetes, apnea, and

6

fibromyalgia." (*Id.*) The ALJ further explained why she included postural and environmental limitations in the RFC:

> It should be noted the undersigned finds the record supports additional postural limitations due to the intermittent reduction in left knee strength at 4/5 documented in the record, coupled with her reports of radicular back pain, knee stiffness, bilateral hand pain and dropping items; body habitus, and generalized pain symptoms associated with fibromyalgia. The undersigned also finds the record would support additional environmental limitations on hazards given [Plaintiff's] history of apnea, diabetes, body habitus, and reduced spinal and joint range of motion.

(*Id.*)

The ALJ concluded that she did not adopt Dr. Aina's findings verbatim and found them only partially persuasive because "the evidence of record supported greater limitation and an overall more restrictive physical residual functional capacity." (*Id.*)

## IV. LAW AND ANALYSIS

Plaintiff asserts one error: "The ALJ misevaluated the medical source opinion of Olayinka Aina, M.D. by failing to provide an adequate explanation for rejecting Dr. Aina's sitting limitation for Plaintiff." (SE, Doc. No. 9 at PageID 739.) For the reasons discussed below, Plaintiff's assertion is well-taken, and the ALJ's decision shall be reversed.

### A. Applicable Law.

ALJs are required to analyze the persuasiveness of "***all*** of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [his] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions.

7

20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed her claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

The first two factors—supportability and consistency—are the "most important." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). The supportability factor recognizes that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Therefore, an ALJ's supportability analysis addresses whether a medical professional has sufficient justification for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.); *accord Burke v. O'Malley*, No. 8:23-cv-415, 2024 U.S. Dist. LEXIS 48944, *8 (M.D. Fla. Mar.

20, 2024) ("Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding.").

The consistency factor, by contrast, recognizes that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ's consistency analysis therefore must compare the medical opinion at issue to evidence from "*other* medical and nonmedical sources." *Ford v. Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023).

The distinction between the supportability and consistency factors is relatively clear when the opinion is from a treating provider. Providers commonly rely on the records in their possession—including progress notes, test results, statements from the claimant, and opinions from other medical providers—to support their medical opinions. An ALJ can readily identify a provider's records that purportedly support their opinion and use them to analyze supportability. Then, when analyzing consistency, the ALJ can readily compare the provider's opinion to opinions and evidence from *other* providers. Because each factor (supportability and consistency) considers different evidence, the reviewing court can easily determine whether the ALJ has addressed each factor.

It can be more challenging to distinguish between supportability and consistency when the opinion is from a state agency consultant. Because they do not have their own treatment records, consultants must review and rely upon documents in the administrative record to support their opinions. The ALJ will, however, consider documents from the

9

same administrative record when analyzing both supportability and consistency. If the consultant's report clearly identifies the documents relied upon to support their opinions, then the ALJ can conduct a supportability analysis that is based on those documents. But if the consultant's report does not clearly identify the documents that support their opinions, then the ALJ's ability to conduct separate supportability and consistency analyses will be limited. *See Kenneth B. v. Comm'r of Soc. Sec.*, No. 3:22-cv-672, 2024 U.S. Dist. LEXIS 49191 (W.D. Ky. Mar. 19, 2024) (citing *Tyrone H. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3652, 2023 WL 2623571, *6 (S.D. Ohio Mar. 24, 2023)).

Because they are the most important factors, the ALJ is required not only to consider the supportability and consistency of all medical opinions in the record, but also to "explain *how* he or she considered them."[4] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (citing to 20 C.F.R. § 404.1520c(b)(2) (internal punctuation omitted and emphasis added)). No "specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (Bowman, M.J.) (internal citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id*.

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022)

---

[4] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

10

(Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13, 2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

  **B. The ALJ Reversibly Erred When Evaluating the Opinions of Consultative Physician Dr. Aina.**

  The ALJ erred by failing to properly articulate the supportability and consistency of all of Dr. Aina's opined limitations. As discussed above, the ALJ evaluated Dr. Aina's opinions regarding Plaintiff's lifting, carrying, and standing abilities by citing to the findings from Dr. Aina's own examination, as well as to other evidence in the record. (Decision, Doc. No. 6-2 at PageID 57.) Therefore, the ALJ arguably addressed the supportability and consistency of these statements. However, the ALJ did not cite to any evidence when she rejected Dr. Aina's opinion regarding Plaintiff's difficulty with

11

engaging in prolonged sitting for more than fifteen to twenty minutes. Instead, she relied solely on the allegedly speculative nature of Dr. Aina's statement: "The undersigned has not adopted the standing/sitting limitations as the examiner cited they 'may be affected' and such limitation was only speculative."[5] (Decision, Doc. No. 6-2 at PageID 57.) This cursory explanation is insufficient to address the supportability or consistency of this part of Dr. Aina's opinion, as is required by 20 C.F.R. § 404.1520c.

Citing cases from the Northern District of Ohio and the Sixth Circuit Court of Appeals, Defendant argues that the ALJ had the discretion to reject Dr. Aina's opinion because of its speculative nature. (Mem. In. Opp., Doc. No. 11 at PageID 752 (citing *Benson v. Saul*, No. 3:19-cv-02804, 2021 WL 1554219, at *5 (N.D. Ohio Jan. 11, 2021), *report and recommendation adopted sub nom. Benson v. Comm'r of Soc. Sec.*, No. 3:19 CV 2804, 2021 WL 804150 (N.D. Ohio Mar. 2, 2021); *Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 434 (6th Cir. 2018)).) Both cases are distinguishable.

In *Benson*, the speculative nature of a consultative examiner's opinion was only one of several reasons that the ALJ relied upon to discount that opinion. 2021 WL 1554219, at *5. Specifically, the ALJ in that case also cited objective medical evidence in the record, plaintiff's lack of formal mental health treatment and referrals to treatment, and the fact that the examiner did not provide specific functional limitations. *Id.* Here,

---

[5] Although the ALJ rejected Dr. Aina's opinion regarding prolonged standing for the same reason, the ALJ explained her decision to limit Plaintiff to the standing requirements consistent with sedentary exertion in the next two sentences. (Decision, Doc. No. 6-2 at PageID 57.) Specifically, she cited to Dr. Aina's examination findings and other evidence of record. (*Id.*) Therefore, the ALJ did not rely solely on speculation to discount Dr. Aina's opinion regarding Plaintiff's ability to engage in prolonged standing.

12

unlike in *Benson*, the ALJ rejected Dr. Aina's opinion regarding Plaintiff's prolonged sitting limitations solely based on Dr. Aina's qualifying language. (Decision, Doc. No. 6-2 at PageID 57.)

Similarly in *Quisenberry*, the ALJ relied on several reasons to reject an opinion that consisted of "a fill-in-the-blank, form note addressed to 'To Whom It May Concern' that stated, in its entirety, '[*The plaintiff*] was seen and treated in the office on *07-13-2009* and is unable to work/attend school. And may return to work/school on *until further notice*." 757 F. App'x at 434 (emphasis in original). The ALJ in that case concluded that the opinion was: 1) "inconsistent with other evidence in the record concerning [the plaintiff's] treatment, results of her clinical tests, and her own reports of her daily activities"; and 2) "quite vague" and did "not actually describe any specific functional limitations that would preclude the claimant from engaging in all work activity in perpetuity." *Id.* The court found that this explanation—in combination with the fact that the conclusion that the plaintiff was "unable to work" was reserved for the administrative decision-maker—constituted substantial evidence to support the ALJ's conclusion. *Id.*

Here, by contrast, the ALJ did not characterize Dr. Aina's opinion as vague, and Dr. Aina's opinion does not concern an issue reserved to the administrative decision-maker. (Decision, Doc. No. 6-2 at PageID 57.) Additionally, the ALJ in this case rejected Dr. Aina's statement solely because of the speculative nature of the opinion, without citing to evidence in the record. (*Id.*)

Significantly, *Benson* and *Quisenberry* also applied the prior rules for evaluating medical opinions, which did not require good reasons to be given for rejecting a non-

13

treating source's opinion. *Benson*, 2021 WL 1554219, at *4 (citing, e.g., *Chandler v. Comm'r of Soc. Sec.*, No. 2:13cv324, 2014 WL 2988433 (S.D. Ohio, July 1, 2014)); *Quisenberry*, 757 F. App'x at 425, 431. But the new regulations that apply here require the ALJ to evaluate the persuasiveness of **all** medical opinions and address their supportability and consistency, regardless of the source. 20 C.F.R. § 404.1520c.

Under the new rules, an ALJ who rejects a medical opinion "solely because it is 'speculative' risks running afoul of the new articulation requirements." *Tracy F. v. Comm'r of Soc. Sec.*, No. 2:23-cv-00188, 2023 U.S. Dist. LEXIS 221816, at *22 (S.D. Ohio Dec. 13, 2023) (Bowman, M.J.) (citing *Howard v. Comm'r of Soc. Sec.,* No. 2:20-cv-4932, 2022 WL 765217, at *3-4 (S.D. Ohio Mar. 14, 2022) (Marbley, Chief D.J.)). An ALJ who rejects an opinion as "vague" or "speculative" does not meet the minimum articulation requirements to address supportability and consistency, although such errors may in some circumstances be excused as harmless. *Id.*

Based upon this authority, the Court finds that the ALJ failed to meet the minimum articulation requirements of 20 C.F.R. § 404.1520c when she rejected Dr. Aina's opinion solely because she viewed it as being speculative. Unlike the above-cited cases, the Court finds that this error was **not** harmless. Dr. Aina's opinion does not "contain[n] so many qualifiers" and is not "so vague [or] vocationally relevant" that the opinion "would not support a substantive finding that Plaintiff has any lesser residual functional capacity than the ALJ determined." *See Tracy F.*, 2023 U.S. Dist. LEXIS 221816, at *22 (citing *Howard,* 2022 WL 765217, at *4)). Indeed, Dr. Aina's opinion regarding Plaintiff's difficulty with prolonged sitting is supported by her examination

14

findings that Plaintiff was morbidly obese, her straight leg raising was "severely restricted," and she exhibited decreased range of motion of the cervical and lumbar spine, hip, and knees. (AR, Doc. No. 6-7 at PageID 437, 440-42.) Dr. Aina's opinion is also consistent with other evidence in the record, such as examinations that showed tenderness and pain to palpation of the lumbar spine (AR, Doc. No. 6-8 at PageID 685, 720), March 2021 thoracic spine x-rays that showed multilevel mild to moderate degenerative changes (AR, Doc. No. 6-7 at PageID 383), and the January 2022 lumbar spine MRI that showed moderate central spinal stenosis secondary to anterolisthesis, facet arthrosis, and ligamentum flavum hypertrophy at the L4-5 level, as well as a central and left paracentral disc extrusion herniation, moderate central spinal stenosis with abutment of the nerve roots, and moderate facet arthrosis at the L2-3 level.[6] (AR, Doc. No. 6-8 at PageID 722-23). Also, Dr. Aina stated her opinion in vocationally relevant terms that could support a more limited RFC than the one the ALJ crafted (e.g., an additional sit/stand option).

For these reasons, the Court finds that the ALJ erred in her analysis of Dr. Aina's opinion, and the error was not harmless. The ALJ's decision will therefore be reversed and remanded.

## V. REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand

---

[6] Plaintiff's orthopedist described the MRI results as showing "significant arthritis with spinal stenosis" of the lumbar spine. (AR, Doc. No. 6-8 at PageID 724.)

under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to the medical opinion evidence, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 9) is GRANTED;

2. The Court REVERSES the Commissioner's non-disability determination;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4.         This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5.         This case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge